## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

DEBRA SIMMONS-MYERS                                                PLAINTIFF

VERSUS                            CIVIL ACTION NO.: 2:10cv216-WAP-JMV

CAESARS ENTERTAINMENT CORPORATION,
D/B/A HARRAH'S CASINO, and
BL DEVELOPMENT CORP.                                   DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendants' Motion for Summary Judgement [**docket entry no. 47**]. Having carefully considered the Motion, Plaintiff's opposition thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. Facts

Plaintiff Debra Simmons-Myers is a former employee of Defendant Harrah's Casino.[1] She claims Harrah's fired her in violation of 42 U.S.C. § 1981, which prohibits discrimination or retaliation on the basis of race, and Title VII of the Civil Rights Act of 1964, 29 U.S.C. §§ 2000e et seq., which prohibits discrimination or retaliation on the basis of race or gender. Specifically, Simmons-Meyers, who is a white female, complains that other similarly-situated black male employees were treated more favorably than her while she was employed by Harrah's and further

---

[1] Defendant BL Development Corp. was technically the Plaintiff's employer, but the Court will refer to it as Harrah's-as did the Defendants in their summary judgment brief-in the interest of simplicity.

argues that she was terminated by Harrah's because she filed an EEOC charge complaining of the unfavorable treatment. Harrah's responds that there is no evidence of unfavorable treatment and that it terminated Simmons-Myers as a part of a larger reduction in force.

## II. Standard of Review for Summary Judgment Motions

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." <u>Ginsberg 1985 Real Estate P'ship v. Cadle Co.</u>, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The Court is ever mindful that summary judgment should be exercised cautiously in discrimination cases which often require courts to delve into motive and intent. Hayden v. First Nat. Bank of Mt. Pleasant, Tex., 595 F.2d 994, 997 (5th Cir. 1979). Accordingly, with regard to employment discrimination claims, a district court should be hesitant to grant summary judgment based on "potentially inadequate factual presentation." Id. (citations omitted). Nevertheless, summary judgment in favor of the defendant is hardly uncommon in discrimination cases and is appropriate if the plaintiff's claim has no basis in fact. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997).

### III. Analysis

**1. Whether Plaintiff Failed to Exhaust Her Administrative Remedies**

Simmons-Myers filed an EEOC charge alleging gender discrimination related to perceived unfair treatment of similarly-situated employees before her employment with Harrah's was terminated. Exactly one day before her employment was terminated, Simmons-Myers requested her notice of right to sue, and she received this notice from the EEOC shortly after her termination. There is no evidence that she informed the EEOC of her intervening termination. Harrah's argues that Simmons-Myers's claims in connection with the termination of her employment are barred because the allegations contained in the EEOC charge pertain to facts occurring before her termination. Furthermore, Harrah's argues, in a footnote, that Simmons-Myers never alleged race discrimination in her EEOC charge, and therefore, her race discrimination claim under Title VII is barred because it is beyond the scope of her EEOC charge. Simmons-Myers disputes Harrah's argument that the claims associated with the termination of her employment are barred, citing only one case, Gupta v. East Texas State University, but ignores Harrah's argument that her race discrimination claim should be dismissed.

"Courts have no jurisdiction to consider title VII claims as to which the aggrieved party has not exhausted administrative remedies." Clayton v. Rumsfeld, 106 F. App'x 268, 271 (5th Cir.

4

2004) (citations omitted). The purpose for requiring exhaustion is to allow the administrative agency the opportunity to investigate and resolve any claims of discrimination. Id. Thus, a Title VII suit "'may extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge.'" Id. (quoting Fine v. GAP Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993)). To determine whether a reasonable EEOC investigation could grow out of an administrative charge, a district court focuses on the factual statements contained in the charge. Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462 (5th Cir. 1970)). A district court views factual statements in the broadest reasonable sense, considering whether the employer is put on notice of the existence of the nature of the charges. Id. (citing Manning v. Chevron Chem. Co., 332 F.3d 874, 878-89 (5th Cir. 2003)).

**A. Race Discrimination Claims Are Barred As a Matter of Law**

In light of the foregoing law, the Court agrees with Harrah's that, to the extent that Simmons-Myers alleges a race discrimination claim under Title VII,[2] such a claim is barred as a matter of law for failure to exhaust administrative remedies. In her EEOC charge, Simmons-Myers clearly alleges she was treated

---

[2] The Amended Complaint states that the Plaintiff's race discrimination claim arises under 42 U.S.C. § 1981. However, Paragraph 11 of the Amended Complaint states that the Defendants are liable "under the race, sex and retaliation prohibitions of Title VII of the Civil Rights Act of 1964."

5

differently than two other Harrah's employees because she is a female, but nowhere in her charge does she suggest race discrimination. The entire factual basis of her EEOC charge is as follows:

> On March 10, 2010, I reported Valerie Morris, Vice President of Sales to Tammy Young, Human Resources Manager, about harassing e-mails. Tammy Young told me that she did mention my complaint to Valarie Morris. After the complaint, I am being written up. Kim Thomas, Director of Sales, told me that Valarie Morris strongly advised her to write me up.
>
> On April 21, 2010, I received a written Performance Documentation for first quarters 2010. However, they also mentioned third and fourth quarter for 2009. After questioning Kim Thomas about the male's quarterly achievement which was lower, she informed me that Michael Wilson and Darrell Russell are new employees. I reminded her that in third and fourth quarter I was also new. I began my employment with the company on April 27, 2009.
>
> I am required to have a higher goal than my male remote Sales Manager. I was told by Kim Thomas, that I am required to have a higher goal because of the client's contacts when I came on board. If I have higher goals than the males, why are we all being paid the same salary? My goals expectations need to be the same as the males or an increase in salary.

Morever, not only do the facts fail to suggest discrimination based on race, the Discrimination Statement states:

> I believe I have been discriminated against because of my Sex, female, and Retaliation, in that after the reporting of Valarie Morris to Tammy Young, I was given a written warning reference my performance and higher goals than the my male employees, in Violation of Title VI of the Civil Rights Act of 1964, as amended.

EEOC charge, docket entry 55-17 (typos in the original). Because no reasonable reading of the charge would put either the EEOC

6

investigators or Harrah's on notice that Simmons-Myers attributed the alleged adverse employment action–the written warning–to her race, the Court will dismiss Simmons-Myers's race discrimination claim arising under Title VII because it is beyond the scope of the EEOC charge.[3] 42 U.S.C. § 1981 does not provide administrative remedies or require exhaustion thereof, and therefore, following further discussion of whether Simmons-Myers exhausted her remaining claims, the Court will address Simmons-Myers's race discrimination claim under that statute.

**B. Simmons-Myers May Not Proceed With Her Gender Discrimination Claim in Connection with the Termination of Her Employment**

Likewise, the Court agrees with Harrah's that Simmons-Myers's Title VII gender discrimination claim in connection with the termination of her employment is barred.[4] Simmons-Myers cites Gupta v. East Texas State University for the proposition that the Court

---

[3] Simmons-Myers did not argue in response to the Defendants summary judgment motion that the failure to allege race discrimination in her EEOC charge was a mere procedural oversight. See Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). Even if she had, the Court finds no merit to this argument, as neither Simmons-Myers's race or the race of other employees was identified in the EEOC charge. It is clear from the facts contained in the charge that the Plaintiff believed her gender was the cause of the alleged discrimination and retaliation.

[4] For the record, the Court notes that the Plaintiff's gender discrimination claims and related retaliation claims in this case arise exclusively under Title VII, as 42 U.S.C. § 1981 does not provide a basis for a gender discrimination claim. See, e.g., Stewart v. NCI Group, Inc., 2011 WL 310255, at *1 n.1 (S.D. Miss. Jan. 28, 2011).

may consider an unexhausted claim arising after the EEOC charge was filed if that claim grows out of the EEOC charge. In Gupta, the Fifth Circuit stated:

> [I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging *a retaliation claim growing out of an earlier charge*; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.

654 F.2d 411, 414 (5th Cir. 1981) (emphasis added). But, more recently, the Supreme Court held in National Railroad Passenger Corporation v. Morgan that a Title VII plaintiff has the obligation to file an administrative claim as to each discrete discriminatory act. 536 U.S. 101, 110-14 (2002); see also Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (finding that Morgan's holding applies to claims arising both before and after a claim is filed). In a recent unpublished opinion, the Fifth Circuit, citing Morgan, declined to extend Gupta's exception to any circumstances other a "retaliation claim growing out of an earlier charge," and for this reason, it affirmed the district court's determination that a distinct *discrimination* claim not included in the EEOC charge was barred for failure to exhaust administrative remedies, even though the claim arose after the plaintiff had filed an EEOC charge. Sapp v. Potter, 413 F. App'x 750, 753 (5th Cir. Feb. 22, 2011). The court of appeals also appeared to express its doubt, citing holdings from other circuits, as to whether Gupta's narrow procedural exception for retaliation claims remained viable after

8

Morgan, but it declined to address the issue. Sapp, 413 F. App'x at 753 n.2.

As explained by Sapp, there is no question that Supreme Court's holding in Morgan interprets Title VII to require a plaintiff to exhaust her administrative remedy for a discrete allegation of *discrimination* occurring *after* the filing of her EEOC charge. See also, Martinez, 347 F.3d at 1210-11 (10th Cir. 2003); Adams v. Mineta, 2006 WL 367895, at *4 (D.D.C. Feb. 16, 2006). There are limited situations, such as hostile work environment claims, when a discrete discriminatory act may involve repeated conduct drawn out over a period of time, but in this case, Simmons-Myers's termination is a discrete event requiring exhaustion. Morgan, 536 U.S. 101 at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). Because Simmons-Myers did not exhaust her gender discrimination claim in connection with the termination of her employment, there is no question that Title VII bars her from bringing her gender *discrimination* claim before this Court.[5]

---

[5] The fact that EEOC issued the notice of a right to sue some days after the Plaintiff was terminated is of no consequence as there is no evidence before this Court to suggest that the EEOC was either made aware of or considered the Plaintiff's termination. As a practical matter, therefore, an EEOC investigation into the Plaintiff's termination could not "reasonably be expected to grow out of the charge of discrimination." Clayton, 106 F. App'x at 271. As the Fifth Circuit has put it, "a person cannot reasonably expect a concluded investigation to include an event that has not yet occurred." Sapp, 413 F. App'x at 752.

9

**C. Simmons-Myers May Not Proceed With Her Retaliation Claim Under the <u>Gupta</u> Exception**

The question remains, however, whether the <u>Gupta</u> exception is applicable to Simmons-Myers's *retaliation* claim arising out of her earlier EEOC charge, and if so, whether <u>Gupta</u>'s narrow exception survives <u>Morgan</u>. The circumstances in this case differ slightly from those in <u>Gupta</u>. In <u>Gupta</u>, the plaintiff's retaliation claim arose as he was litigating an earlier discrimination charge, which was properly exhausted; <u>Gupta</u>, 654 F.2d at 413, whereas in the present case Simmons-Myers was terminated on October 20, 2010, over a month before she filed suit in this Court, and thus had the opportunity to notify the EEOC of her termination prior to filing suit. <u>See</u> Complaint, docket entry no. 1. This fact alone lends itself to the conclusion that Simmons-Myers should have complied with Title VII's express requirements by either filing a new claim or amending her earlier EEOC charge.[6] <u>See</u> 29 C.F.R. § 1601.12. Doing so would have given the EEOC the opportunity to investigate the circumstances surrounding the termination of employment prior to this Court's consideration of her claim. <u>Fine</u>, 995 F.2d at 578.

---

[6] The Court cannot say whether the EEOC had the authority to reopen her first EEOC charge after the notice of the right to sue was issued. <u>See</u> 29 C.F.R. § 1601.28(a)(3); <u>Eidenbock v. Charles Schwab & Co., Inc.</u>, 283 F. App'x 549 (9th Cir. 2008) (quoting half of the applicable regulation to determine that the aggrieved cannot amend). Regardless, Simmons-Myers could have filed a new retaliation charge, wherein she could have alleged the same acts of discrimination alleged in her first EEOC charge in support of her retaliation claim. <u>See</u> <u>Morgan</u>, 536 U.S. at 113.

Nevertheless, Gupta's holding, taken literally, applies to this case. The Plaintiff's initial EEOC charge of gender discrimination and retaliation were filed before her discharge, and the present retaliatory discharge claim grows directly out of her earlier EEOC charge and thus falls squarely within the exception articulated in Gupta. See Amended Complaint ¶ 9, docket entry 34. As a result, the Court has no choice but to address whether Morgan, which is of course binding on this Court, forecloses application of Gupta's otherwise applicable exception. After carefully considering the issue, the Court concludes, that pursuant to Supreme Court's instruction to follow the plain language of the statute, the Gupta exception is not viable in the present case.

There is one notable distinction that the Court can make between Morgan and Gupta, but that distinction is more superficial than substantive. In Morgan, the Supreme Court addressed cognizable claims based on events that occurred *before* the plaintiff filed the lawsuit in district court, whereas Gupta addressed claims based on events that occurred *after* the lawsuit was being litigated in district court. The Gupta Court's determination that it had ancillary jurisdiction over the plaintiff's newly arisen retaliation claim seems reasonable given the alternative of foreclosing the retaliation claim and requiring him to restart the administrative process based upon facts similar to those it was already adjudicating. See generally Gupta, 654 F.3d 411. Imposing

11

such requirement does indeed seem inefficient.

But, regardless of the reasonableness of this holding, it no longer has any force. The Supreme Court in Morgan repudiated the Ninth Circuit's "continuing violations" theory, which, not unlike the policy exception created in Gupta, is predicated on a secondary event being "related to" or having "grow[n] out of" the first. Morgan, 536 U.S. at 107. In reaching this conclusion, the Supreme Court focused narrowly on the statutory text, which states in mandatory language: "a charge . . . *shall be filed* within one hundred and eighty days after the alleged unlawful employment practice occurred." Morgan, 536 U.S. at 109 (emphasis in original) (quoting 42 U.S.C. § 2000e-5(e)(1)). It explained that the event "occurred" on the "day that it happened," and further, most times, the occurrence is a discrete event, requiring exhaustion. Id. at 110. This interpretation holds true regardless of whether the event, "occurred" before or after filing the EEOC charge. The statute is clear that a charge must be filed "after the alleged *unlawful employment practice* occurred." 42 U.S.C. § 2000e-5(e)(1) (emphasis added).

Morever, the policy justifications offered by the Gupta Court in the creation of its procedural exception are fundamentally at odds with the policy espoused in Morgan. The Gupta Court's exception to Title VII's procedural requirement—and its consequent ancillary jurisdiction determination—was premised on two "strong

12

practical reasons and policy justifications": (1) there was no need to create the additional procedural difficulty of a what would amount to a burdensome double-filing, and (2) "[e]liminating this needless procedural barrier [would] deter employers from attempting to discourage employees from exercising their rights under Title VII." Gupta, 654 F.2d at 414. In stark contrast, the Morgan Court viewed "strict adherence to the procedural requirements specified by the legislature [to be] the best guarantee of evenhanded administration of the law." Morgan, 536 U.S. at 109 (citation omitted); see also Adams, 2006 WL 367895, at *3.

Here, Simmons-Myers alleges that Harrah's terminated her employment in retaliation for filing an EEOC charge; however, she did not file a retaliation charge or amend her earlier EEOC charge after her termination occurred. As noted above, termination is a discrete discriminatory event requiring exhaustion, unlike a hostile work environment claim, where a discriminatory event can "occur" over a period of time. Simmons-Myers should have filed an EEOC charge as to this discrete event. In failing to do so, she did not comply with Title VII's mandatory requirement that "a charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Considering that Morgan prescribes strict adherence to Title VII's legislated procedural requirements, particularly in light of the fact that Simmons-Myers could have easily exhausted

13

her administrative remedies with respect to her retaliatory discharge claim prior to filing suit, the Court finds that her claims is barred for failure to exhaust the administrative remedies available to her for this claim.

**2. Whether There is a Genuine Issue of Fact to Support the Plaintiff's Race Discrimination Claim Arising Under 42 U.S.C. § 1981**

As explained above, Simmons-Myers race discrimination claim against Harrah's is viable under 42 U.S.C. § 1981; however, the Court finds no evidence of race discrimination in this case. The only allegations of race discrimination in the Amended Complaint are limited to the circumstances surrounding her dismissal; therefore, the Court's analysis is focused on that event. Amended Complaint ¶ 8. Race discrimination claims, whether arising under Title VII or 42 U.S.C. § 1981, are evaluated under the familiar McDonnell Douglas framework. Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745, 660 F.3d 211, 213 (5th Cir. 2011). To make out a prima facie case of race discrimination, Simmons-Myers must show: (1) she is a member of a protected class; (2) she is qualified; (3) she experienced an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably.[7] Harrison v. Corrections Corp. of Am.,

---

[7] Harrah's, however, maintains that it laid off Simmons-Myers as a part of large scale reduction in force (RIF). In an RIF case, Simmons-Myers must demonstrate: (1) she is within a protected

2012 WL 1623575, at *2 (5th Cir. May 09, 2012).

After reviewing the evidence in this case, the Court concludes that Simmons-Myers cannot make even the "very minimal showing" necessary to establish her prima facie case because she has not produced evidence that other employees were treated differently because of their race. Nichols, 81 F.3d at 41 (5th Cir. 1996). As an initial matter, Simmons-Myers was the *only* white employee on the sales team who lost her job. The other three employees that were laid off were black. Also, Simmons-Myers has not and cannot produce evidence to suggest that she was replaced by a non-white employee. The record is undisputed that the position of remote sales manager was discontinued. Simmons-Myers attempts to show race discrimination by arguing that Harrah's fired her to avoid being sued by the other black sales managers. According to her theory, Harrah's had to fire the three underperforming black sales managers and therefore also decided to lay her off in order avoid the

---

group; (2) she has been adversely affected by her employer's decision; (3) she was qualified to assume another position at the time of the discharge; and (4) evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996). The Court is not certain that the present case qualifies as an RIF case because it is unclear how many people were laid off at Harrah's and the time period during which the layoffs occurred. As far as the Court can tell, the remote sales team employees were the only Harrah's employees laid off at the time. Regardless, under the alternative RIF prima facie test, Simmons-Myers race discrimination fails for similar reasons: there is absolutely no evidence, circumstantial or direct, that Harrah's decision to terminate Simmons-Myers was based on her race.

15

inference of race discrimination. As implausible as this theory might sound, it is not unreasonable. The problem with this theory, however, is that it is just a theory.

The only piece of evidence Simmons-Myers offers to support this argument is an e-mail from Valerie Morris wherein she indicates that she included some written documentation in a few of the sales managers' files "just to be consistent." See Aug. 9, 2010 E-mail, docket entry no. 55-28. Simmons-Myers reads the e-mail as an admission that Morris's final warning to her was completely baseless, and Morris simply added the criticism of the others just to avoid the charges from Simmons-Myers that she was being treated unfairly. As an initial matter, the e-mail does not support this reading, as Morris's criticism of Michael, a black employee, is mostly indistinguishable from her criticism of Simmons-Meyers, suggesting that race did not motivate Morris's attempt at "consistency." Moreover, the rest of the record does not corroborate the theory that Morris might have taken action against Simmons-Myers because of her race. For instance, there is some evidence in the record that Harrah's showed favoritism to its male employees, or could have perhaps acted in response to Simmons-Myers's gender-based complaints, but nothing in this case supports a race discrimination claim. Accordingly, Harrah's motion for summary judgment with respect to Simmons-Myers's race discrimination claim pursuant to § 1981 is granted. This claim will

16

be dismissed with prejudice.

### 3. Whether There is Genuine Issue of Material Fact as to the Gender Discrimination Claim and Retaliation Claim Contained in the EEOC Charge

Finally, the Court will briefly consider the merits of the gender discrimination and retaliation claim that are properly before it, although it recognizes that the basis for recovery in the Amended Complaint and the arguments contained in the Plaintiff's summary judgment brief are inextricably linked to her discharge. The specific allegations levied in the EEOC charge, restated succinctly, are: (1) Simmons-Myers had higher sales goals than her male counterparts; (2) she received negative performance documentation regarding her first sales quarter whereas other males' first quarter sales numbers were excused; (3) the negative performance documentation was issued in retaliation for her complaints about Valerie Morris's favoritism of other male employees. EEOC charge, docket entry 55-17. The Plaintiff's gender discrimination and retaliation claims are also evaluated under the McDonnell Douglas burden-shifting test. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-54 (1981). As with her race discrimination claim, Simmons-Myers must establish her prima facie case of gender discrimination by demonstrating: (1) she is a member of a protected class; (2) she is qualified; (3) she experienced an adverse employment action; and (4) she was treated less favorably than someone outside the protected class. Bouvier v. Northrup

17

<u>Grumman Ship Systems, Inc.</u>, 350 F. App'x 917, 921 (5th Cir. 2008). To recover for her retaliation claim, she must first show that "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." <u>Stewart v. Miss. Transp. Com'n</u>, 586 F.3d 321, 331 (5th Cir. 2009).

Considering only the events as they are described in the EEOC charge, Simmons-Myers cannot make out a prima facie case of discrimination or retaliation because she did not experience an adverse employment action before the termination of her employment. The only potentially materially adverse employment action alleged in the EEOC charge is the written warning administered by Young, but, under the reasonable-worker standard articulated by the Supreme Court, the written warning does not constitute a materially adverse action in this context. <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68-70 (2006); <u>see also</u> <u>DeHart v. Baker Hughes Oilfield Operations, Inc.</u>, 214 F. App'x 437, 442 (5th Cir. 2007). There is no evidence that Simmons-Myers was denied any promotion, salary increase, or any other material benefit as a consequence of the written warning. Further, the adverse action, the written warning, did not deter her, nor would it deter a reasonable worker, from filing an EEOC charge of retaliation in an attempt to be made whole. <u>See</u> <u>DeHart</u>, 214 F. App'x at 442. <u>But see</u> <u>Turrentine v.</u>

United Parcel Service, Inc., 645 F. Supp. 2d 976, 989 (D. Kan. 2006) (questioning the logic of Dehart). In short, Simmons-Myers has failed to show discrimination or retaliation that produced "an injury or harm." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67. Without having suffered a materially adverse employment action, Simmons-Myers cannot recover for those gender discrimination and retaliation claims that were included in her EEOC charge. Accordingly, these claims must be dismissed with prejudice.

### IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Summary Judgement [**docket entry no. 47**] is **GRANTED**. To the extent that Plaintiff alleges a race discrimination claim pursuant to Title VII, that claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Title VII gender discrimination and retaliation claims that arise out of the termination of her employment are also **DISMISSED WITHOUT PREJUDICE**. Plaintiff's § 1981 claim that is based on the termination of her employment is **DISMISSED WITH PREJUDICE**. Plaintiff's Title VII gender discrimination and retaliation claim regarding the allegations contained in the EEOC charge are **DISMISSED WITH PREJUDICE**. To be clear, the Court's holding forecloses the possibility of recovery for the Defendants' alleged pre-termination retaliation and discrimination pursuant to Title VII or for race discrimination in regard to Plaintiff's termination pursuant to § 1981. The Court reaches no conclusion as to how its

decision affects any future Title VII race and gender retaliation or discrimination claims with respect to the termination of her employment.

**SO ORDERED,** this the 12th day of July, 2012.

                                                /s/ David Bramlette
                                           **UNITED STATES DISTRICT JUDGE**